UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

CHARLES A. MIX,                                                     Case No.: 04-32733-WS
                                                                          Chapter 7
                     Debtor,                                         Honorable Walter Shapero
_____/

RANDEE SAENZ,

                     Plaintiff,

v.                                                                                     Adv. No.: 04-3142

CHARLES A. MIX,

                     Defendant,

_____/

OPINION DECLARING CLAIM NON-DISCHARGEABLE

     This 523(a)(6) proceeding has a soap operaish if not a somewhat sordid quality which appears not to have diminished the seriousness and vigor with which the parties have pursued it. The Plaintiff claims non-dischargeable damages incurred as the result of a battery committed upon him by the Defendant Debtor. This Court conducted a trial on the matter and finds the following facts. Plaintiff's wife was in the process of leaving and divorcing him when an illicit relationship arose between Plaintiff and Defendant/Debtor's wife. That relationship was the cause of divorce proceedings between Debtor and his wife, which were pending at the time the incident giving rise to this proceeding arose. Debtor and his wife were still living together in their home not far from where Plaintiff resided along with his two sons and the girlfriend of one of those sons and an infant born of the relationship between the latter two. That girlfriend had also acted as a babysitter for

1

Debtor and his wife. The only telephone in the Plaintiff's household was his cell phone. One evening after having celebrated her daughter's birthday at Debtor's and her house, Debtor's wife, along with a girlfriend, visited Plaintiff's home. During that visit, due to a certain apparent amount of game playing, Debtor's wife purloined Plaintiff's cell phone and returned with it to her and Debtor's home about midnight. Plaintiff having become aware of the cell phone's taking coupled with his son's girlfriend's expressed immediate need or desire to call her then absent boyfriend (Plaintiff's son - who they thought was at someone's home the telephone number of which was unknown but which was programmed into the missing cell phone) combined to produce immediate efforts to obtain the return of the Plaintiff's cell phone. This took the form of an after midnight call by the son's girlfriend from a neighborhood pay phone to Debtor's and his wife's home which the wife answered. That led to arranging for the girlfriend to immediately go over to the house to retrieve the phone. It was by then 2 or 3 in the morning. Plaintiff owned a Ford pickup truck. Because the Plaintiff did not or could not drive due to some prior alcohol related driving violations, he together with his son, (who had only a learner's permit and thus was allowed to drive only in the presence of another licensed driver) and the other son's girlfriend and her infant, got into the truck to drive to Debtor and his wife's home to pick up the phone. They arrived there not long after the indicated phone call and parked the truck. Plaintiff was in the passenger seat, and the girl and the infant were in the rear seat. The son's girlfriend exited the vehicle and went to the front door. Debtor's wife appeared, likely with the missing cell phone, giving it to the girlfriend, who in the company of Debtor's wife, started to walk back toward the parked truck in the street. It is at this point that the evidence diverges. Plaintiff states the truck was parked across the street from the house, and his version of what happened next, corroborated to a large degree by the girlfriend, the

2

son, and Debtor's wife, is that Plaintiff exited the passenger side of the vehicle (his son remaining in the driver's seat), and walked around the rear of the truck to meet the two women who were walking toward the truck; at that moment, Plaintiff states Debtor suddenly appeared brandishing a stick or similar object and started hitting him with it. He did not see the Debtor coming before that and said nothing at all, let alone anything provocative. Plaintiff retreated and did not retaliate and fled back to the vehicle, joined by the girl, and they immediately drove away to the hospital where Plaintiff's material wounds were treated appropriately.

Debtor's version is that the truck was parked on the side of the street nearest the house; or in the driveway of his house; that having been awakened by the late phone call to his wife, he went outside to see what was happening, and somewhere on the lawn between the front of his house and the sidewalk or street, he was struck by some object or objects apparently propelled by Plaintiff and was also the subject of various provocative and life threatening statements made by the Plaintiff. According to the police report of his statements to the police, he said Plaintiff punched him in the head; and Debtor denied striking the Plaintiff at all and didn't remember anything else that happened between him and Plaintiff.

As the result of some previous so called harassment incident between them, Plaintiff had been admonished by police not to appear at Debtor's residence. As the result of the incident involved in this proceeding, the police became involved and took statements, investigated the matter, and made a report. Sometime later, Debtor pled guilty, on advice of counsel, to a charge of Attempted Assault-Aggravated, and received a suspended sentence and was ordered to pay a fine of $250, and costs of $260. Plaintiff commenced a civil proceeding against Debtor in state court that was pending at the time the bankruptcy was filed.

3

A few days following the incident, Debtor apparently obtained an ex parte personal protection order based on his version of what occurred. On or about October 29, 2002, about 30 days after the incident, a hearing was held in state court on Plaintiff's motion to terminate the personal protection order. Testimony of Plaintiff, Debtor and the Plaintiff's son's girlfriend, was taken resulting in the Court terminating the personal protection order, having concluded, in part, that the Debtor was not truthful when he said that Plaintiff assaulted him and he therefore needed a personal protection order.

Based primarily on (1) the testimony and evidence presented before this Court; (2) the conclusion of the state court at the referred to the October 29, 2002, hearing; and (3) the plea of the Debtor to the criminal charge of aggravated assault, this Court concludes that the version of events testified to by Plaintiff and his witnesses preponderates. Based on those facts, the question is whether or not the damages involved are non-dischargeable under 523(a)(6).

<u>Analysis</u>

The elements of non-dischargeability under § 523(a)(6) are: (1) desire to cause the consequences of the act or belief that the consequences are substantially certain to result; and (2) no just cause or excuse. Kennedy v. Mustaine (In re Kennedy), 249 F.3d 576, 580 (6th Cir. 2001) (citations omitted). The seminal case in this circuit on the subject is Campbell v. Markowitz (In re Markowitz), 190 F.3d 455, 464 (6th Cir. 1999) in which at page 464 that court said "that unless 'the actor desires to cause consequences of his act, or. . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)."

4

Given this Court's factual conclusions, it is not reasonably arguable that Defendant's actions were not "willful" based upon the common sense notion that when one physically strikes another - especially with a weapon (i.e., stick) - with enough force to cause a laceration in the head, an alternative, but plausible explanation is all but impossible to discern. See Kleman v. Taylor (In re Taylor), 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004) (Under similar circumstances, the court held that the debt was nondischargeable); and Homan v. Perretti, 172 B.R. 214, 217 (Bankr. N.D. Ohio 1994) (where the court held that one person does not strike a blow at another person's face without intending to injure the other person). Debtor in this case rather argues that he had just cause or excuse for what he did, thereby negating the existence of the required malice on his part, which, in this case is a position tantamount to, or a species of self defense or a reasonable reaction to a provocation.

In Taylor, the court addressed a self defense argument, by stating:

> In many situations involving physical altercations, – the barroom fight being a common paradigm – the respective parties blame the other for starting the altercation. This case is no exception, with the Defendant contending that it was the Plaintiff, not himself, who struck first. Who struck who first, however, while not necessarily being irrelevant, is not the dispositive issue; a person, even though struck first, may obviously retaliate in a manner that, beside exceeding the scope of the original attack, is done in conscious disregard of one's duties or without just cause or excuse. Instead, the issue of being struck first indirectly raises and is only relevant to the issue of self-defense.
> It is black-letter law that one who believes that he or she is about to be harmed is privileged to use reasonable force to protect themselves. Acts properly taken, therefore, in self-defense provide a valid defense to an action brought under § 523(a)(6); this has always been understood. However, the claim of self-defense is an affirmative defense, thereby placing the burden on the Defendant to establish its elements. Also, from an evidentiary standpoint, it cannot be overlooked that by raising an affirmative defense, which in effect admits the truth of the underlying allegations, the Defendant has

5

> ostensibly admitted that he acted with malice, but that he has a legally exculpatory reason for the action.

In re Taylor, 322 B.R. at 309 (internal citations omitted).

In Michigan, the elements of self defense are: (1) the defendant honestly and reasonably believed that he was in danger; (2) the degree of danger which he feared was serious bodily harm or death; (3) the action taken by the defendant appeared at the time to be immediately necessary; and (4) the defendant had done all that was reasonably possible to avoid using force by retreating, if retreat was safe. People v. Heflin, 434 Mich. 482, 502-03 (1990).

First, even if the Court determined that the Debtor's account of the events is accurate (i.e., that Debtor came outside his residence to smoke a cigarette, Plaintiff threw an object at Debtor, and threatened Defendant with bodily harm), there is nothing in the record showing that Defendant needed to leave his dwelling; or that Defendant couldn't reasonably have retreated to his dwelling after being hit with an object or was in any imminent danger of any, let alone serious, physical harm, or that Debtor couldn't have restrained Plaintiff without the use of a weapon. Moreover and more importantly, there are inconsistencies in Plaintiff's account of the events and four witnesses independently testified to roughly the version of the facts Plaintiff testified to. Further, Debtor has failed to offer any evidence that he suffered any appreciable injury, which tends to show that he did not suffer any injury, or that if he did it was not severe enough to reasonably occasion retaliation utilizing a stick or weapon inflicting the injuries involved here.

The provocation or just cause and excuse here argued for is essentially the culmination and build up of what apparently became either the unbearable resentment and anger on the part of Debtor towards Plaintiff arising out of the latter causing the breakup of Debtor's marriage, or worse and (less justifiable), the seizing by Debtor of an opportunity to intentionally harm the object of that

6

resentment and anger.  Debtor would be less than human if he did not harbor some resentment and anger under the circumstances, though one could also comment that such was as justifiably directed toward his wife as to the Plaintiff.  That said, however, applicable law, analogous to what is needed to prove self defense, requires that such be held in check unless the provocation was immediate and apparent, there were no alternatives to disengagement, and the reaction to the provocation was reasonable and responsive to the threat.  As a matter of evidentiary fact, this Court finds that at the time of the incident, Plaintiff made no threats against Debtor or took any action which would justify the assault and battery committed.  Furthermore, even if threats were made or an object was thrown, assault and battery that occurred was not justified by the other facts whether those immediately surrounding the incident, or the buildup over time of Debtor's anger and resentment against Plaintiff and/or Debtor's wife.  Applicable law says that in these circumstances, the price one pays for actions like those of Debtor in these circumstances is the non-dischargeability of the damages involved - which is this Court's conclusion and decision.

In a broad sense, there is plenty of blame to go around in this case and almost everyone involved exercised what may be charitably characterized as bad judgment, both as respects the immediate incident as well as the underlying situation; i.e., the Debtor's wife taking the Plaintiff's cell phone, the decision made to try and retrieve it in the middle of the night; coming out of the house rather than just delivering the cell phone at the door, exiting the vehicle at all, etc.  What's more, this decision unfortunately may not be the end of the saga.  These parties are now likely going back to state court to determine in the pending civil lawsuit the actual amount of damages found undischargeable - affording them yet another "opportunity" to continue their fight.  Even _after_ the trial of this matter in this Court, this Court raised the possibility of mediation - to no avail.  Thus,

unless cooler and more responsible heads prevail, the damage chapter of this tawdry tale will present the parties with their third opportunity to air their grievances in open court regarding the incident in question (and that does not take into account the various divorce proceedings, if any, which might still be involved). That is their right, but this Court again strongly suggests to, and urges, the parties to try and find out some way without further litigation to end the matter and go on with their lives.

An appropriate Order is being contemporaneously entered.

**Entered: September 08, 2006**

                                            **/s/ Walter Shapero**
                                  **Walter Shapero**
                                  **United States Bankruptcy Judge**